IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **LAUREN HAWSE, FRANK R. O'BRIEN, JEAN M. O'BRIEN, STEPHEN J. PIEPER, M.D.,** individuals,<br><br>Plaintiffs,<br><br>versus<br><br>**SAM PAGE, M.D.,** in his capacity as County Executive of St. Louis County, Missouri,<br>and<br>**EMILY DOUCETTE, M.D.,** in her capacity as Director of the St. Louis County Public Health Department,<br><br>Defendants. | Case No. _____<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**VERIFIED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

**COME NOW** plaintiffs, and for their cause of action against defendants, state:

**NATURE OF ACTION**

1. This Action presents a facial constitutional challenge to the COVID-19 pandemic "stay at home" order of the St. Louis County Department of Public Health ("Order"), because it (a) deprives plaintiffs of their liberty without due process of law, (b) prohibits plaintiffs' free exercise of religion by banning religious services attended by more than 10 persons while permitting all manner of secular and commercial activities without similar restrictions, and (c) abridges plaintiffs' right of peaceable assembly in groups of more than 10 persons. A true and accurate copy of the Order is attached hereto as Exhibit A.

1

2. The Order violates (a) the Free Exercise of Religion and Freedom of Expression and Assembly clauses of the First Amendment, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (b) Religious Freedom, Freedom of Expression, and Right to Peaceable Assembly guarantees, in Article I, Section 5, 7, 8 and 9 of the Missouri Constitution, and (c) Missouri's Religious Freedom Restoration Act, Mo. Rev. Stat. § 1.302.

3. This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to freedom of religion, expression, association and due process, under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

4. The Eastern District of Missouri is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Order; and it is the District in which substantially all of the events giving rise to the claims occurred.

**PARTIES**

1. Plaintiff Lauren Hawse is a resident of St. Louis County, Missouri, who is a Christian.  Attending and participating in worship and fellowship in her church community, especially on Sundays, is an essential requirement of her sincerely held religious belief.  As a result of restrictions imposed by the defendants as set forth below, she has been unable to attend Sunday services and other religious activities in which she usually participates and she has been impeded in her exercise of rights to freely associate and assemble and to freedom of expression. The church building in which she regularly worships has a seating capacity of up to 600, and

there is ample space for 150 to exercise proper social distancing.  Her church is also equipped with hand sanitizers and other materials to enable visitors to observe appropriate hygienic precautions related to the COVID-19 situation.

2. Plaintiffs Frank and Jean O'Brien, husband and wife, are residents of St. Louis County, Missouri.  They are Christians.  Attending and participating in worship and fellowship in their church community, especially on Sundays, is an essential requirement of their sincerely held religious belief.  As a result of restrictions imposed by the defendants as set forth below, they have been unable to attend Sunday services and other religious activities in which they usually participate and they have been impeded in their exercise of rights to freely associate and assemble and to freedom of expression.  The church building in which they regularly worship has a seating capacity of at least 500, and there is ample space for 150 to exercise proper social distancing.  Their church is also equipped with hand sanitizers and other materials to enable visitors to observe appropriate hygienic precautions related to the COVID-19 situation.

3. Plaintiff Stephen Pieper, M.D. is a resident of Glencoe, St. Louis County, Missouri, who is a Christian.  Attending and participating in worship and fellowship in his church community, especially on Sundays, is an essential requirement of his sincerely held religious belief.  As a result of restrictions imposed by the defendants as set forth below, he has been unable to attend Sunday services and other religious activities in which he usually participates and he has been impeded in his exercise of rights to freely associate and assemble and to freedom of expression.  The church building in which he regularly worships has a seating capacity of approximately 800, and there is ample space for a third of that number to exercise proper social distancing.  His church is also equipped with hand sanitizers and other materials to enable visitors to observe appropriate hygienic precautions related to the COVID-19 situation.

4.     Defendant Dr. Emily Doucette, M.D., is the Director of the St. Louis County Department of Public Health (DPH) and is sued herein in that capacity.

5.     Defendant Dr. Sam Page, M.D. is County Executive for St. Louis County, Missouri and is sued herein in that capacity.

## FACTUAL ALLEGATIONS

### The COVID-19 Crisis and Its Abatement

6.     Beginning in February, 2020, officials from the United States Centers for Disease Control (CDC) became concerned about a novel coronavirus originating in Wuhan, China. Early epidemiological models predicted that the unchecked spread of the virus in the United States could lead to an overwhelming of healthcare infrastructure and more than two million deaths within a short period of time, if aggressive containment measures were not undertaken.

7.     By mid-March, 2020, the federal government was relying on models predicting 100,000 to 200,000 deaths within months. In response, the CDC issue guidelines calling for, among other things, individuals to maintain "social distancing" of at least six feet between persons and the avoidance of social gatherings of more than 10 people in enclosed spaces. Some states and local governments implemented strict "stay at home" regimes, mandating the closure of many businesses and limitations on individual activities and movements. The principal objectives of these actions were to reduce the number of deaths and slow the spread of the virus so that healthcare infrastructure would not be overwhelmed, resulting in more deaths.

8.     By mid-April, 2020, based on data from the field, the models that CDC officials were relying on suggested that mortality rates from the virus were much lower than originally anticipated. Based on antibody tests from hard hit areas the evidence suggests that mortality rates are at levels seen with annual influenza. Moreover, although certain areas of the country –

4

especially the New York City metropolitan area – saw significant surges in COVID-19 infections and deaths, overall, the number of infections and deaths was well below initial expectations based on evolving epidemiological models.  Moreover, hospitals and other health care infrastructure were not overwhelmed, as feared, even in critical areas such as New York Metropolitan area.  In fact in most places in the United States, including Missouri and St. Louis County, the burden on health care infrastructure was well within manageable levels.

9. The containment of the virus has reached a level where the federal government and many states are implementing plans to relax restrictions and allow people eventually to resume normal activities. Even New York, the hardest hit of all states, has begun to implement steps toward lifting its restrictions.  On April 27, 2020, Missouri Governor Mike Parson announced that the State restrictions would be lifted on May 4, 2020.  Defendant St. Louis County Executive Dr. Page, on the other hand, announced on April 22, 2020, that County restrictions would remain in place indefinitely.

10. The data derived from the COVID-19 experience to date suggests that the expected U.S. mortality rate is within the range comparable to the mortality rate for influenza and pneumonia, and the actual health care infrastructure utilization has been well within capacity and has been acknowledged by County authorities as declining.

11. Thus, the urgent necessity for draconian restrictions like those insisted on by defendants do not exist and, therefore, present no compelling governmental interest, nor are defendants' restrictions narrowly tailored or the least restrictive means of pursuing the asserted governmental interest.

**Order**

12. On or about March 28, 2020, defendant Dr. Doucette, at the direction of the defendant Dr. Page, issued St. Louis County Department of Public Health 2019 Novel Coronavirus ("COVID-19") Amended Stay at Home Order ("Order"). A true and accurate copy of the Order is attached hereto as Exhibit A.

13. On or about April 22, 2020, defendant Dr. Page announced that the Order was extended indefinitely.

14. The Order prohibits county residents from leaving their homes except to engage in what the Order identifies as "Essential Activities" (Part IV.A.1.) or "Essential Businesses" (Part IV.C.1.), and prohibits the organization or attendance at gatherings "of any number of people outside of a Residence, Essential Business or while engaging in an Essential Activity" (Part IV.B.1.). Exhibit A, at 10. The Order identifies 16 categories of Essential Activities, and 48 categories of Essential Businesses. Exh. A, at 2-7.

15. All Essential Activities and Essential Businesses are required to observe Social Distancing requirements. However, one category of "essential" activity or business carries an additional restriction: to comply with "gathering size limitations."

16. Order, Part II.E.7 provides:

> "Essential Activities" means activities that are necessary for a person to… participate in religious services… *but only to the extent consistent with reasonable compliance with* Social Distancing Requirements and *gathering size limitations*"

Exh. A, at 2 (*emphasis added*).

17. Similarly, Part II.F.27 defines "Essential Businesses" to include "churches, religious services… *but only to the extent consistent with* reasonable compliance with Social Distancing Requirements and *gathering size limitations*." Exh. A, at 5 (*emphasis added*).

6

18. Although "gathering size limitations" is not explicitly defined, the Order defines as a Prohibited Activity "any gathering of ten or more people in a single space or room, unless otherwise specifically permitted by this Order" (Part III.S.1.). Exhibit A, at 9. In its online document entitled Stay at Home Order Frequently Asked Questions (County FAQ), the County has definitively indicated that the "gathering size limitations" applicable to religious activities refers to the fewer-than-ten limitation under "Prohibited Activities." A true and accurate copy of the County FAQ is attached hereto as Exhibit A-1. ("Many religious buildings remain open, but gatherings of 10 or more people are prohibited.") Exh. A-1, at p. 6.

19. Among the 48 specified categories of "Essential Businesses" the Order exempts from the "gathering size limitations" are commercial operations such as: supermarkets, convenience stores, and other establishments engaged in the retail sale of food, dry goods, pet supplies, and any household consumer products, hardware stores, laundromats, home office products retailers, and public transportation. None of them is subject to any restriction on the number of persons who may be present within their establishments.

20. There is no rational basis – and certainly no empirical data – to conclude that there is less likelihood of COVID-19 spread among Walmart shoppers, for example, than among church goers who observe the same social distancing and other hygienic precautions.

21. Upon its face, therefore, the Order discriminates on the basis of religion, tacitly deeming – despite their "essential" designation – that religious activities, are, to invert the dictum of Orwell's pigs, "less essential than others."

7

## CLAIMS

### FIRST CLAIM FOR RELIEF
### Violation of Free Exercise, Free Expression & Assembly Clauses of
### First and Fourteenth Amendments to U.S. Constitution
### (42 U.S.C. § 1983)
(*By all Plaintiffs against all Defendants*)

22. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

23. In imposing and enforcing the Order and the State Order, the defendants are acting under color of state law.

24. The Order and the State Order each facially prohibit the free exercise of religion, religious expression, and assembly/association.

25. Plaintiffs' religious observance regularly and significantly entails joining in association with others to worship and pray and support one another and bear witness to and express their religious belief.

26. The prohibitions contained in the Order have the intended purpose of thwarting plaintiffs' ability to exercise their religion, their expression of their faith, and their freedom of assembly and association.

27. The Order explicitly targets plaintiffs' exercise of religious practice.

28. The Order violates the Free Exercise Clause of the First Amendment to the U.S. Constitution because they prohibit gatherings for religious services and, in banning such gatherings, they infringe plaintiffs' exercise of their rights to freedom of expression and assembly.

29. The Order facially violates the Free Exercise Clause of the First Amendment to the U.S. Constitution because it is not neutral and not of general application but applies only to

religious activity and discriminates against religious exercise as compared to the numerous secular activities that pose equal or greater risks of disease transmission.

30. The Order facially violates the Free Exercise Clause of the First Amendment to the U.S. Constitution because it burdens religious practice and is neither neutral nor generally applicable and it patently fails to advance a compelling governmental interest and is not narrowly tailored to achieve such an end.

31. There is no rational basis or scientific justification for the gathering size limit of the Order. Defendants have no compelling governmental interest in limiting religious gatherings to 10 people and there is no scientific evidence to support their purported justification. To the extent defendants may assert a compelling interest, they have not demonstrated, nor can they demonstrate, that the Order's restrictions are essential to the achieving such an interest or that the restrictions are not unduly burdensome to plaintiffs' constitutional rights.

32. Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer serious and irreparable harm by the denial of their constitutional rights as aforesaid, unless defendants are enjoined from implementing and enforcing the Order.

33. Defendants' conduct aforesaid was done with callous disregard for and in reckless indifference to the constitutional rights of plaintiffs.

### SECOND CLAIM FOR RELIEF
### Violation of Freedom of Expression and Association Clauses-First and Fourteenth Amendments to U.S. Constitution
### (42 U.S.C. § 1983)

(*By all Plaintiffs against all Defendants*)

34. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

35. In addition to the Order's prohibition of plaintiffs' ability to worship, the Order also infringes plaintiffs in their rights to association and expression.

36. In addition to their exercise of religion, plaintiffs engage in many different activities in association with others and in furtherance of, among other things, charitable, educational, artistic, social, cultural, religious, and political objectives and for the communication of ideas in connection therewith.

37. The Order infringes upon these fundamental rights.

38. The limitation of gatherings to 10 or fewer people is a substantial burden on plaintiffs' freedom of assembly and expression. It is arbitrary and not reasonably directed to the furtherance of a compelling governmental interest. It is also not neutral or of general application, nor is it the least restrictive means of accomplishing a legitimate governmental objective.

39. The Order, therefore, poses a threat of irreparable harm to plaintiffs in the exercise of fundamental constitutional freedoms, unless it is enjoined by this Court.

40. Defendants' conduct aforesaid was done with callous disregard for and in reckless indifference to the constitutional rights of plaintiffs.

### THIRD CLAIM FOR RELIEF
### Denial of Plaintiffs' Liberty Without Due Process in Violation of the Fourteenth Amendment to the United States Constitution

41. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

42. Plaintiffs here challenge the constitutionality of the very concept of a "stay at home" order. The Order effectively places plaintiffs under house arrest unless they are engaged in activity the government deems "essential" or which are "otherwise authorized." See Order,

Part II ("The intent of this order is to ensure that the maximum number of people remain in their places of residence to the maximum extent feasible… When people leave their place of residence… to obtain or perform essential services, or to facilitate otherwise authorized activities…")

43. The County invoked Mo. Rev. Stat. §192.020 and 19 CSR 20-20.040 as authority for its actions; however, although those provisions authorize the director of DHSS and "local health authorities" to take various actions and make and enforce rules and Order to safeguard the health of the people, the authority is specifically limited to the categories of action specified, and the authority is expressly limited to "legal means necessary." 19 CSR 20-20.040(1).  Nowhere among the actions authorized under 19 CSR 20-20.040, is the authority to command ***healthy individuals*** to "remain in their places of residence to the maximum extent feasible [except] to obtain or perform essential services or to facilitate otherwise authorized activities." Order, Part II, p 1.

44. Some believe that the extreme – and with 25 million Americans unemployed, no one can deny it is extreme – government response to the COVID-19 pandemic will be judged by history to have been an hysteria-driven overreaction.  But that is not a judgment plaintiffs need to assert.  Rather, it is plaintiffs' position that, whatever the initial reasoning for the County "stay at home" Order, that reasoning is no longer valid in light of data that has emerged demonstrating the true extent of COVID-19 lethality and the transmissibility.  In other words, the assumptions (or fears) that motivated the shelter in place Order can no longer rationalize the extreme and unconstitutional actions of the defendants.

45. The Fourteenth Amendment to the United States Constitutions provides that "No state shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, section 1.

46. By continuing to maintain their "stay at home" Order, defendants are depriving plaintiffs – and St. Louis Countians – their liberty without due process of law.  Plaintiffs are thereby suffering irreparable harm and, therefore, this Court must declare the Order unconstitutional and enjoin its enforcement.

**FOURTH CLAIM FOR RELIEF**
**Violation of Religious Freedom, Free Expression and Right to Peaceable Assembly**
**Article I, Sections 5, 7, 8, and 9 of Missouri Constitution**
(*By all Plaintiffs against all Defendants*)

47. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

48. The Order infringes plaintiffs' right to pray and express their religious beliefs.

49. The Order infringes plaintiffs' right to pray corporately in a public setting.

50. The Order facially violates plaintiffs' rights to religious freedom assured by Article I, Section 5 of the Missouri Constitution.

51. The restrictions in the Order explicitly discriminate against religion in violation of Article I, Section 7 of the Missouri Constitution.

52. The restrictions in the Order explicitly infringe upon the plaintiffs' rights to communicate their religious and other ideas by means of and in connection with gatherings of more than 10 persons, in violation of Article I, Section 8 of the Missouri Constitution.

53. The restrictions in the Order explicitly infringe upon the plaintiffs' rights to peaceably assemble within their church communities and otherwise by means of and in connection with gatherings of more than 10 persons, in violation of Article I, Section 9 of the Missouri Constitution.

54. Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer serious and irreparable harm by the infringement of their constitutional rights and by defendants' religious discrimination, unless defendants are enjoined from implementing and enforcing the Order.

55. Defendants' conduct aforesaid was done with callous disregard for and in reckless indifference to the constitutional rights of plaintiffs.

## FIFTH CLAIM FOR RELIEF
### Violation of Missouri Religious Freedom Restoration Act
### Mo. Rev. Stat. § 1.302
(*By all Plaintiffs against all Defendants*)

56. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein

57. The Order restricts plaintiffs' free exercise of religion.

58. The restrictions on plaintiffs' exercise of their religion are not in the form of a rule of general applicability.

59. The restrictions explicitly discriminate against religion.

60. The defendants cannot demonstrate that the application of their restrictions on the exercise of religion is essential to further a compelling governmental interest.

61. Defendants cannot demonstrate that their restrictions on the exercise of religion are not unduly restrictive under the relevant circumstances, because on their face they demonstrate other less restrictive methods for accomplishing their objectives.

**WHEREFORE**, plaintiffs respectfully pray for judgment in their favor and against defendants jointly and severally: (a) declaring the Order unconstitutional and invalid; (b) entering temporary, preliminary and permanent injunctions against implementation and

enforcement of said Order, (c) an award of plaintiffs' reasonable attorney fees as allowed by applicable law, including 42 U.S.C. § 1988; (d) an award of punitive damages; (e) an award of plaintiffs' costs herein, and (f) for such other and further relief as the Court deems just and proper.

        Respectfully submitted,

*/s/ Michael D. Quinlan*
Michael D. Quinlan, #35314
Quinlan Law Firm, LLC
7777 Bonhomme Ave., # 1800
Clayton, MO 63105
(314) 223-6035; FAX: (314) 261-9393
quinlanlawfirm@gmail.com

**ATTORNEY FOR PLAINTIFFS**