**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **LAUREN HAWSE,** *et al.*, individuals, <br><br>    Plaintiffs, <br><br>versus <br><br>**SAM PAGE, M.D.,** *et al.*, <br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) )   Case No. 4:20-cv-00588-RLW |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER[1]**

The First Amendment forbids the government to prohibit the free exercise of religion. The County Order explicitly prohibits plaintiffs' free exercise of religion by forbidding religious gatherings of 10 or more persons. It is a facial violation of the Constitution that cannot be justified as a law of general applicability or as a necessary means to accomplish a compelling governmental interest.  The Order is facially *not* a law of general applicability because it permits innumerable gatherings of unlimited size for other reasons.  The Order does *not* serve a compelling governmental interest because the religious gatherings it prohibits logically do not pose unique health risks compared to the many ubiquitous larger gatherings the Order allows. Accordingly, the Order's prohibition of gatherings of ten or more persons for the exercise of religion is unconstitutional and must be enjoined.

Plaintiffs do not assert an absolute right to do whatever one wishes in the name of one's faith, or that legitimate governmental authority cannot impose reasonable, generally applicable,

---

[1] This Motion is in substance a request for a preliminary injunction.  An order granting or denying the Motion would have the practical effect of granting or denying an injunction.  *See*, *e.g.*, *Fresenius Kabi USA, LLC v. Nebraska*, 733 F. App'x 871, 872 (8th Cir. 2018).

1

and logically directed restrictions on personal liberty in the face of a deadly pandemic.  Rather, plaintiffs contend that defendants' Order is facially an unconstitutional prohibition of and a burden upon religious exercise that is, upon its face, *not* generally applicable and *not* logically directed to achieving its asserted purpose.  Because the Order arbitrarily and unreasonably discriminates against protected religious activity, it is unconstitutional, and the Court should enter a temporary restraining order and/or a preliminary injunction against its enforcement.

## STATEMENT OF FACTS

On March 28, 2020, defendant Dr. Doucette, at the direction of the defendant Dr. Page, issued St. Louis County Department of Public Health 2019 Novel Coronavirus ("COVID-19") Amended Stay at Home Order ("Order") (Exhibit A), which is the subject of this litigation.  The original Stay at Home Order was issued on March 23, 2020. Exhibit A at 12.  On or about April 22, 2020, defendant Dr. Page announced that the Order was extended indefinitely.[2]

The Order opens by announcing that violating the Order is "punishable as a misdemeanor" (Part I, p. 1), and proclaims that "The intent of this order is to ensure that the maximum number of people remain in their places of residence to the maximum extent feasible…" while they may "leave their place of residence… to obtain or perform essential services, or to facilitate otherwise authorized activities…" *See* Order, Part II.  "A person may be outside their Residence only to engage in Essential Activities. Otherwise, every person… shall be and remain within their Residence." Order, Part IV.A.1.  "No… persons may… engage in Prohibited Activities." Part IV.C.3. The term "Prohibited Activities" includes, "any gathering of ten or more people in a single space or room, unless otherwise specifically permitted by this Order." Part III.S.1.  Thus, the Order forbids persons within St. Louis County from undertaking

---

[2] https://fox2now.com/news/st-louis-county-executive-to-sign-extended-stay-at-home-order-today/ (accessed 4/30/20).

any activity outside their residences unless it is among 16 defined "Essential Activities" or in pursuit of any of 48 defined categories of "Essential Businesses." Order, Parts II.E. & F., IV.A.1., IV.B.1., & IV.C.2.

Under the Order, all Essential Activities and Essential Businesses (together, "Essential Activities") are required to observe "Social Distancing" requirements. However, with one exception, no category of Essential Activities carries the additional restriction of complying with "gathering size limitations." The single exception relates to the exercise of religion. Part III.E.7. defines "Essential Activities" to include:

> activities that are necessary for a person to… participate in religious services… ***but only to the extent consistent with reasonable compliance with*** Social Distancing Requirements and ***gathering size limitations***"

Exh. A, at 2 (*emphasis added*). Similarly, Part III.F.27. defines "Essential Businesses" to include "churches, religious services… ***but only to the extent consistent with*** reasonable compliance with Social Distancing Requirements and ***gathering size limitations***." Exh. A, at 5 (*emphasis added*).

Although "gathering size limitations" is not explicitly defined, the Order defines as a Prohibited Activity "any gathering of ten or more people in a single space or room, unless otherwise specifically permitted by this Order" (Part III.S.1.). Exhibit A, at 9. In its online document entitled Stay at Home Order Frequently Asked Questions (County FAQ), the County has definitively indicated that the "gathering size limitations" applicable to religious activities refers to the fewer-than-ten limitation under "Prohibited Activities." *See* Exhibit A-1, at p. 6. ("Many religious buildings remain open, but gatherings of 10 or more people are prohibited.")

Among the 48 defined categories of "Essential Businesses" the Order exempts from the "gathering size limitations," are, among others, commercial operations such as supermarkets, convenience stores, and other establishments engaged in the retail sale of food, dry goods, pet

3

supplies, and any household consumer products, hardware stores, laundromats, home office products retailers, and public transportation.  *None* of these "Essential Businesses" is subject to the "gathering size limitations" to which religious activities are.

Upon its face, therefore, the Order discriminates on the basis of religion, functionally treating religious activities negatively; despite their "essential" designation, they are not *really* essential.  To invert the dictum of Orwell's totalitarian pigs, "some 'essential' activities are less 'essential' than others."

Plaintiffs are residents of St. Louis County, Missouri.  They are Christians.  Attending and participating in worship and fellowship in their church community, especially on Sundays, is an essential requirement of their sincerely held religious belief.  As a result of restrictions imposed by the defendants, they have been unable to attend Sunday services and other religious activities in which they usually participate and they have been impeded in their exercise of rights to freely associate and assemble and to freedom of expression.  Verified Complaint, ¶¶ 1-3.

Plaintiffs each declare that the church buildings in which they regularly worship have seating capacities ranging from 500 to 800, with ample space for attendees to exercise proper social distancing.  Their churches are also equipped with hand sanitizers and other materials to enable visitors to observe appropriate hygienic precautions related to the COVID-19 situation. *See id*.

## ARGUMENT

**A. Plaintiffs Are Likely to Succeed on the Merits of Their Free Exercise Claim.**

<u>1. The Order is facially unconstitutional as a prohibition of the free exercise of religion.</u>

The Order explicitly prohibits gatherings of greater than 10 persons for the purpose of "religious services" or "other spiritual practices."  Order, Part II.E7. and F.27., Exh. A at 2, 5.  It is, therefore, indisputably a facial prohibition on the free exercise of religion.  And, it does so in

4

contrast to its express allowance of innumerable secular activities that are subject to no "gathering size limitations" at all. *Id.*

Laws that target religious activities for disfavored treatment are not neutral and generally applicable, and are thus *always unconstitutional*.  Government action "targeting religious beliefs as such is *never permissible*." *Church of the Lukumi Babalu Aye., Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) (*emphasis added*).  The Free Exercise Clause "protect[s] religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017), quoting *Lukumi*, 508 U.S. at 533 (*internal markings omitted*).

2. The Order's gathering size limitations are not neutral or of general applicability.

The County's Order is not neutral on its face because it subjects "essential" religious gatherings to the less-than-10-person limit, which *none* of the other "essential" activities or businesses must observe.  Plaintiffs here have attested to capacity, space, and resources within their church buildings that would equip larger assemblies adequately to comply with the Order's specified safety measures (including social distancing and hygienic requirements, hereinafter, "Safety Measures") and thus be able to satisfy the purposes of the County order *at least as well* as gatherings in "big-box" stores, supermarkets, laundromats, etc.  In short, there is no rational basis to presume, as the Order does, that there is more likelihood of COVID-19 spread among churchgoers than among Walmart shoppers, for example, who observe the same Safety Measures.

The Order is not of general applicability because it specifically targets "essential" religious gatherings for unfair treatment while allowing other secular "essential" activities to operate with wide latitude. "Despite the [County's] proffered interest in preventing [spread of

5

COVID-19], the [Order]… forbid[s] [no] ["essential" gatherings] but those occasioned by religio[n]." *See Lukumi*, 508 U.S. at 543.

<u>3.  The Order's application of "gathering size limitations" to religious activities fails strict scrutiny.</u>

Because the gathering size limitations of the Order apply ***only*** to religious practices, they are for that reason neither neutral nor of general applicability and, therefore must withstand strict scrutiny. *First Baptist Church v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, *6 (D. Kan. April 18, 2020) (state's COVID-19 restriction banning church gatherings greater than 10 people was neither neutral nor of general applicability and thus subject to strict scrutiny) (citing *Lukumi*, 508 U.S. at 546).  They cannot withstand strict scrutiny.

Under strict scrutiny analysis, the County must prove that prohibiting plaintiffs from participating in church services with ten or more persons advances interests of the highest order and is narrowly tailored in pursuit of those interests. *Lukumi*, 508 U.S. at 546. The County cannot satisfy this "highest level of review." *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016).

Courts must look with skepticism on laws purporting to advance a compelling governmental interest when those laws fail to protect the asserted interest in significant respects. *See Lukumi*, 508 U.S. at 547. ("a law cannot be regarded as protecting an interest 'of the highest order' when it leaves appreciable damage to that supposedly vital interest unprohibited"), *On Fire Christian Ctr. v. Fischer*, No. 3:20-cv-264-JRW, 2020 WL 1820249, *7 (W.D. Ky. April 11, 2020) (strict scrutiny not satisfied because state's actions are "underinclusive" and "overbroad" in that they did not prohibit a host of equally dangerous (or equally harmless) activities that were permitted on the basis that they are "essential").

6

Here, the County has no compelling interest in limiting church gatherings to less-than-ten when so many varied, larger, and ubiquitous gatherings are allowed. The County cannot seriously demonstrate a compelling state interest in allowing a person to stand in line with others at a convenience store to buy a lottery ticket while prohibiting the grieving widow from having the consolation of her family and friends at her spouse's funeral. Nor can the County demonstrate a compelling state interest for allowing practically unlimited traffic at Costco, while preventing the celebration of a wedding or bar mitzvah.

What matters in accomplishing the County's interest in preventing the spread of COVID-19 is that people who congregate for *any* reason do so while observing the County's prescribed Safety Measures[3]  If the Safety Measures are good enough for Home Depot shoppers, they are good enough for churchgoers.

The County cannot argue that gatherings for religious activities pose unique health risks that do not arise in mass gatherings among other, secular Essential Activities. The legitimate health and safety concerns arising from people attending religious services inside a church in gathering of 10 or more would logically be present with respect to most if not all other Essential Activities. *See First Baptist Church v. Kelly*, 2020 WL 1910021, at *7. Under the Order, "religious services or other spiritual practices" are illegally "targeted for stricter treatment due to the nature of the activity involved, rather than because such gatherings pose unique health risks that mass gatherings at commercial and other facilities do not, or because the risks at religious gatherings uniquely cannot be adequately mitigated with safety protocols." *Id*.

---

[3] This is logically self-evident, but it is also demonstrated by the public statements of the County's COVID-9 Task Force Commander, who reported that the "reproduction factor" – the estimated number of individuals that a patient infected with COVID-19 infects – for the virus dropped from greater-than-five when the voluntary CDC Guidelines were announced to approximately by the time the County Order went into effect. *See* Onder Declaration, ¶¶ 6, 17 & Exhibit A.

7

<u>4.  The Order's discriminatory prohibition of religious exercise is not a constitutionally valid exercise of police power.</u>

Where government health officials impose epidemic restrictions that go beyond what is reasonably required for the safety of the public and thereby violate rights secured by the Constitution, the courts have a duty to review the officials' exercise of their police power and hold such laws to be invalid where appropriate. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 28, 30 (1905).  *Jacobson* has been cited as a justification for restrictions on constitutional liberties in connection with government action to address the exigencies of the COVID-19 pandemic.  *See e.g. In re Abbott*, 954 F.3d 772 (5th Cir. 2020).  However, properly applied, *Jacobson* supports plaintiffs' entitlement to injunction in this case.  Unlike this case but like *Abbott*, *Jacobson* involved a non-discriminatory law of general applicability – the state's compulsory vaccination law, enacted to confront a growing smallpox epidemic.  The defendant refused to be vaccinated, asserting the law violated his Fourteenth Amendment right "to care for his own body and health in such way as to him seems best." *Jacobson*, 197 U.S. at 26.  In upholding the constitutionality of the law, the court said, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27.  The court declined to second-guess "as a matter of law… the mode adopted under the sanction of the state, to protect the people at large [as] arbitrary, and not justified by the necessities of the case." *Id*. at 28.  However, the court continued:

> We say necessities of the case, because it might be that an acknowledged power of a local community to protect itself against an epidemic threatening the safety of all might be exercised in particular circumstances and in reference to particular persons in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons.

*Id*.  The court concludes that the reach of the state's police power is limited by the Constitution, as are all legislative enactments:

8

> If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health… has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

*Id*. at 31.

This is exactly the case here: as shown above, the County Order has no substantial relation to its object of mitigating the spread of COVID-19, and, as a facial prohibition of the free exercise of religion, it is beyond question a plain, palpable invasion of rights secured by the First Amendment. *See First Baptist Church*, 2020 WL 1910021, at *5.

It follows, therefore, that this Court has a duty to review the County's Order and to give effect to the Constitution by enjoining those provisions which prohibit plaintiffs' free exercise of religion in violation of the First Amendment.

**B. Plaintiffs Have Already Suffered Irreparable Harm and Will Continue to Suffer Irreparable Harm Without an Injunction.**

The Supreme Court recognizes that the deprivation of "First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Plaintiffs' constitutional rights have been violated by the County Order and will continue to be violated absent injunctive immediate relief.

**C. The Balance of Equities Sharply Favors Plaintiffs.**

The equities favor Plaintiffs because the law places a premium on protecting constitutional rights. The County's imposition of "gathering size limitations" on plaintiffs' ability to assemble for religious services irreparably harms Plaintiffs' constitutional freedoms.

In contrast, an injunction will not harm the County at all.  There is no way to measure what if any marginal effect will result by allowing plaintiffs and other churchgoers to participate

9

in religious gatherings on the same footing as gatherings in supermarkets, home improvement outlets, "big box" stores, etc. As plaintiffs have declared, like the commercial establishments mentioned, churches are capable of providing rules and materials to enable participants to observe County imposed Safety Measures. The County can achieve any valid interest through any special guidance on Safety Measures it can offer to religious institutions beyond the guidance already available. County and empowered local health officers can subject known infected persons and "clusters" to orders of isolation and quarantine. The County is free to enact permissible and reasonable regulations on church services, including narrowly-tailored social distancing and gathering conditions precedent. But, as demonstrated above, a blanket prohibition on all religious gatherings involving 10-or-more individuals serves no governmental interest and is not narrowly tailored.

### D. An injunction would serve the public interest.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd' sub nom. Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014) (*quotation marks omitted*). This is particularly true for First Amendment freedoms.

## CONCLUSION

Because the Order facially prohibits plaintiffs' free exercise of religion and cannot be salvaged as a non-discriminatory law of general applicability and because it does not substantially advance the asserted governmental interest, it is unconstitutional and must be enjoined by the Court.

Respectfully submitted,

*/s/ Michael D. Quinlan*
Michael D. Quinlan, #35314
Quinlan Law Firm, LLC
7777 Bonhomme Ave., # 1800
Clayton, MO 63105
(314) 223-6035; FAX: (314) 261-9393
quinlanlawfirm@gmail.com

**ATTORNEY FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

Undersigned counsel certifies that the foregoing was served April 30, 2020, by email on counsel for defendants Stephen Capizzi at SCapizzi@stlouisco.com and Beth Orwick at BOrwick@stlouisco.com.

*/s/ Michael D. Quinlan*